IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

CARSON BANK,

        Plaintiff,

Vs.                                      No. 10-2322-SAC

TARGA INVESTMENT
CORPORATION, et al.,

        Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the motion to dismiss (Dk. 8) filed by the defendants, TARGA Investment Corporation ("TIC") and Texas All Risk General Agency, Inc. ("TARGA") (collectively "Defendants"). The Plaintiff, Carson Bank ("Carson"), has filed a response opposing the motion. (Dk. 11). The Defendants have filed a reply in support of dismissal. (Dk. 14). Having reviewed the pleadings and researched the relevant law, the court files this order as its ruling.

The Plaintiff Carson's complaint arises from a commercial loan of $3,198,150 ("Loan") that Aleritas Capital Corporation ("Aleritas" f/k/a Brooke Credit Corporation) made on November 30, 2005, to TIC and that TARGA allegedly was intended to benefit from this loan. Also on

November 30, 2005, Aleritas sold participatory interests totaling approximately 100% of the value of the Loan to Carson Bank, City National Bank and Trust, Heritage Bank, Home Federal Savings and Loan Association, and Texas Republic Bank (together "the Participants") pursuant to participation certificates and agreements. As provided in those agreements, Aleritas still administered the loan subject to certain events and conditions. In or about August of 2008, Aleritas experienced financial problems and did not remit one or more of TIP's payments to one or more Participants. Because of this breach and its insolvency, Aleritas began concluding its operations and assigned its servicing duties to Carson. The complaint alleges that "Carson Bank also assumed the rest of the administrative duties for the Loan, pursuant to its rights under its participation agreement." (Dk. 1, ¶ 19). From that time, TIC has continued to remit payments on the Loan to Carson.

In count one, Carson seeks a declaratory judgment that the participants own the Loan, that Carson is the Loan's administrator and may enforce the Participant's rights, that the Participants are entitled to enforce the Loan Agreement against TIC, and that the outstanding principal balance of the Loan is $2,542.913.38. Carson alleges there is a justiciable

controversy between Carson and Defendants over the enforceability of the Loan Agreement. This controversy arises from Defendants having filed in April of 2010 an action in the District Court of Dallas County, Texas, against Aleritas alleging TIC was defrauded by Aleritas and seeking to have the Loan Agreement rescinded. Defendants filed this action without naming Carson or any Participants as parties to this action.

Count two alleges Defendants have materially breached the Loan Agreement "by causing one or more events of default." (Dk. 1, ¶ 29). Alleging the conditions precedent have been met for enforcing the Loan Agreement, Carson claims it and the Participants have been damaged by TIC's breach.

Count three alleges that "[b]y challenging the enforceability of, and seeking to rescind, the Loan Agreement, TIC has repudiated its remaining obligations under the Loan Agreement." (Dk. 1, ¶ 34). Carson alleges it reasonably believes the default is incurable as TIC has not cured the default with the time prescribed by the Loan. Nor has TIC "retracted or otherwise altered its repudiation of its remaining obligations under the Loan Agreement." (Dk. 1, ¶ 37). Carson seeks judgment and damages on this claim of anticipatory repudiation.

**MOTION TO DISMISS STANDARDS**

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). The court accepts all well-pled factual allegations as true and views these allegations in the light most favorable to the nonmoving party. *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010). The court, however, is not under a duty to accept legal conclusions as true. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009).

The Supreme Court recently clarified the focus of such motions:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

4

*Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

In evaluating a Rule 12(b)(6) motion to dismiss, courts are to "consider complaint in its entirety" and also examine documents "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Conversion to a summary judgment motion is unnecessary and "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (internal quotation marks and citation omitted).

**CARSON'S LEGAL AUTHORITY TO BRING COUNTS TWO AND THREE: BREACH OF CONTRACT CLAIMS**

Defendants raise several arguments challenging Carson's legal authority to sue TIC for breach of contract. Generally, "the participant bank has no legal relationship with the borrower." *First Bank of Wakeeney v. Peoples State Bank*, 12 Kan. App. 2d 788, 790, 758 P.2d 236, *rev. denied*, (1988).[1] Thus, Defendants contend that Carson is unable to allege any contractual relationship existing between them, as the named parties to the Loan are Aleritas, as lender, and TIC, as borrower. Defendants challenge Carson's complaint as insufficient in alleging "a legal basis for Carson to make legal claims directly against Defendants for any alleged breach of the" addendum to the Loan. (Dk. 9, p. 6). Defendants deny that Carson has plausibly alleged any well-pleaded facts to support any of the three alternative legal bases suggested in the complaint for bringing these breach of contract claims. All three alternatives are premised on the allegation that Aleritas breached the participation agreement by not remitting payments from TIC and then concluded its operations whereupon

---

[1] This general rule must be understood, however, in this context, "[t]he rights of the participant bank flow not from the participation relationship itself but from the express terms of the specific agreement. . . . The parties to a participation agreement may contract to whatever terms they wish." *First Bank of Wakeeney*, 12 Kan. App. 2d at 790 (citations omitted).

Carson took over Aleritas' administrative duties by reason of: (1) Aleritas assigning certain duties to Carson in an express agreement, (Dk. 1, ¶ 19, Ex. C); (2) Carson assuming the rest of the administrative duties for the Loan as the participation agreements authorized the Participants to remove Aleritas as administrator and to transfer the administrator powers to one of the participants,(Dk. 1, ¶¶ 17 and 19); and (3) Carson having this authority simply by being a purchaser who has an absolute ownership interest in the loan. (Dk. 1, ¶¶ 12 and 19).

Defendants contend the assignment agreement gave Carson only payment processing duties while Aleritas retained all other administrator duties not expressly given to Carson, including the authority to file suit against the Borrower. Defendants argue it is implausible for Carson to allege it acquired any additional authority in light of the timing and terms of the express assignment agreement. Finally, Defendants insist neither the participant relationship nor the participation agreement provide Carson with the authority to sue the borrower.

In its response, Carson highlights the following allegations from its complaint: (1) it has a participatory interest in the Loan (Dk. 1, ¶ 15); (2) the participation agreements provide that if Aleritas failed to comply with its

7

contractual duties or committed any act of insolvency, then the participants could remove Aleritas as administrator and have those administrative powers transferred to a participant (Dk. 1, ¶ 17); (3) that "in or about August 2009 Aleritas" breached the participation agreements and "about the same time, Aleritas became insolvent" (Dk. 1, ¶ 18); (4) in concluding its operations, "Aleritas assigned the servicing duties for the Loan to Carson," and Carson "also assumed the rest of the administrative duties for the Loan, pursuant to its rights under its participation agreement" (Dk. 1, ¶ 19); and (5) "[s]ince that time, TIC has remitted payments on the Loan to Carson," (Dk. 1, ¶ 20). Carson concludes these allegations offer a plausible legal basis for it being, not just a participating bank, but the administrator of the Loan with the authority to enforce it.

Defendants reply that the court should not permit Carson to go forward on the conclusory and contradictory allegation of it having all administrative authority when the assignment agreement between Aleritas and Carson dated September 15, 2008, reserves all such duties to Aleritas. Defendants argue this situation is governed by the general rule that attached documents will control over a complaint's contradictory allegations and that the court need not accept the allegations as true. In Defendants'

8

judgment, the contradiction here renders the allegations implausible.

Defendants are asking the plaintiff to allege with a level of specificity that is not required by the Federal Rules of Civil Procedure or the recent Supreme Court decisions. As explained in *Twombly*, the concern is not with the particularity of the complaint's allegations but whether the complaint states a plausible claim for relief. 550 U.S. at 569 n. 14. Defendants essentially seek detailed factual allegations of when and how Carson acquired the other administrative duties from Aleritas so that they can square this acquisition of authority with the more limited written assignment.

Such detail is not required, for the plausibility of the complaint's allegations is not precluded by the terms or the timing of the written assignment. First, the assignment does not state that it is intended to address or resolve Aleritas's breach of the participation agreements or its insolvency. Second, the assignment expressly provides that it shall not "be construed to take away or diminish any . . . of any Participating Lender's rights in the Participation Agreements." (Dk. 1-3, ¶ 6). Third, the complaint alleges that Aleritas's relinquishment of servicing duties was one event or step that was accomplished by the assignment and that Carson's

assumption of Aleritas's other administrative duties was a separate event that was accomplished by Carson's exercise of its rights under the participation agreement. While it is true that the complaint alleges that the triggering events, Aleritas's breach and insolvency, occurred "about the same time," the complaint does not allege the sequential timing of the assignment agreement and Carson's assumption of other administrative duties. Consequently, the complaint and the attached assignment are not necessarily contradictory, and they do not make it implausible that Carson did acquire processing rights at one time and then assumed the remaining rights later. Moreover, because of the first two observations above, the court finds little traction to the defendants' arguments over the timing of the assignment. The court finds that Carson has sufficiently alleged its authority as the administrator of the Loan to bring these breach of contract claims.

**SUFFICIENCY OF ALLEGATIONS OF BREACH**

Defendants further challenge counts two and three for not alleging a "plausible basis for a breach." (Dk. 9). Defendants argue the allegation in count two: "TIC materially breached the Loan Agreement by causing one or more events of default," (Dk. 1, ¶ 29), is a threadbare recital

10

that states a conclusion without a citation to any breached provision of the Loan. Count three alleges: "[b]y challenging the enforceability of, and seeking to rescind, the Loan Agreement, TIC has repudiated its remaining obligations under the Loan Agreement." (Dk. 1, ¶ 35). Defendants argue this count also is deficient for not identifying a breached provision of the Loan. Defendants also contend that this count is a claim for anticipatory breach of a promise to pay money which is not cognizable under *Cornett v. Roth*, 233 Kan. 936, Syl. ¶ 5, 666 P.2d 1182 (1983).

Defendants cite no authority requiring a complaint to allege the particular provision at issue in a breach of contract action. Count two alleges the material breach occurred "by causing one or more events of default," and the Loan includes terms defining a borrower's "default." (Dk. 1). As relevant to count two, the complaint's only factual allegations of Defendants' acting adversely toward the Loan are found at ¶¶ 24 and 25. If Carson intends to be alleging other actions as events of default in this count, the court would expect the plaintiff to be seeking leave to amend its complaint. As Defendants concede, Count three further alleges that "[b]y challenging the enforceability of, and seeking to rescind, the Loan Agreement, TIC has repudiated its remaining obligations under the Loan

11

Agreement." (Dk. 1, ¶ 35). Carson points that the Loan contains an acceleration clause. (Dk. 1-1, p. 3). The express provision of this contractual remedy certainly distinguishes this case from *Cornett v. Roth*, 233 Kan. at 945. Defendants' arguments are not persuasive in showing that Carson's complaint fails to state claims for relief in Counts two and three.

**COUNT ONE: DECLARATORY JUDGMENT**

Defendants enlist the same arguments above in challenging Carson's lack of contractual authority to sue the borrower under the Loan. The court makes the same ruling here. In the alternative, Defendants ask the court to dismiss or stay this claim in light of the pending Texas suit between Defendants and Aleritas. And as their final alternative argument, Defendants seek to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join Aleritas as a necessary party.

Carson responds attaching an order filed August 3, 2010, by the District Court of Dallas County, Texas. Carson explains that this order dismissed TIC and TARGA's claims related to this Loan based on the mandatory forum-selection clause in the Loan. The state court also found "that considerations of equity favor dismissing those claims in favor of the

proceedings pending in Kansas." (Dk. 11-1, p. 1). Defendants note they have filed in that court a motion to reconsider and maintain some expectation of prevailing on their motion. As of the filing of this order, the parties have not informed the instant court of any decision by the Dallas County District Court. Considering the current status of the Texas litigation, this court has no reason to address the merits of the motion to stay and will deny that request subject to reconsideration in the event that the Texas district court reverse its prior ruling.

Finally, Defendants argue that the declaratory judgment claim should be dismissed for failure to join Aleritas as a necessary party pursuant to Fed. R. Civ. P. 12(b)(7). Defendants offer that "it is difficult to conceive how complete relief can be accorded under Carson's declaratory judgment claim when" Aleritas as the lead lender on the Loan is not a party and particularly when Aleritas's conduct "will be directly at issue under Count One." (Dk. 9, p. 20). Carson responds that Aleritas does not own or administer the Loan and that complete relief can be granted just like in those instances of former property owners. Carson notes that Aleritas has not claimed any interest in this action and has not responded to or participated in Defendant's Texas litigation. Defendants insist that Aleritas

13

remains the "Lender" and that Aleritas must be a necessary party.

"The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (citations omitted). Of the three-part analysis, the first part entails determining under Rule 19(a) whether the absent party is necessary, that is:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a).

A court is able to afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested . . . relief." *Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir.

2001), *cert. denied*, 534 U.S. 1078 (2002).  Carson alleges the justiciable controversy as between it and Defendants and seeks to have its rights as Participant and Administrator of the Loan declared enforceable against Defendants.  On the face of the complaint, the court appears able to grant the full relief that Carson seeks against Defendants without Aleritas being a party to the action.  Defendants have not carried their burden of proving the nature and extent of Aleritas's currently possessed interests, if any, in the Loan and Participation Agreements are such that Carson could not obtain complete declaratory judgment relief without Aleritas being a party.  Nor is there anything of record to show that Aleritas presently claims any interest relating to this action.  Nor is there proof that Aleritas is so situated that a disposition in this case would impair it's ability to protect that interest.  If it is shown later that Aleritas is a necessary party, both sides agree that its joinder is feasible.  Consequently, dismissal is not warranted.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss (Dk. 8) is denied.

Dated this 29th day of October of 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge